IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CANAL INSURANCE COMPANY,

       Plaintiff,

v.                                    CIVIL ACTION NO.   2:23-cv-00737

KIM SAMMONS, et al.,

       Defendants.

MEMORANDUM OPINION AND ORDER

The Court has reviewed *Canal Insurance Company's Motion for Judgment on the Pleadings* (Document 24), the Defendants' *Response in Opposition to Canal Insurance Company's Motion for Judgment on the Pleadings and Cross-Motion for Judgment on the Pleadings* (Document 27), and *Canal Insurance Company's Response in Opposition to Defendants' Cross-Motion for Judgment on the Pleadings* (Document 32).   For the reasons stated herein, the Court finds that the Plaintiff's motion should be granted.

FACTS AND PROCEDURAL HISTORY

James Armstrong is a Florida resident who owns Armstrong Trucking 1 ("Armstrong Trucking"), a Florida-based LLC.   Mr. Armstrong has a Florida CDL license and owns a tractor trailer.   The tractor trailer is registered to Armstrong Trucking in Florida but is contracted to EMA Express ("EMA"), also a Florida-based LLC.   EMA engages in general freight transportation throughout the United States and is insured by Canal Insurance Company ("Canal") under Policy

No. 1-59442500-1.   The policy is a claims-made Business Automobile and Commercial General Liability Policy and was in effect from April 21, 2021, to April 21, 2022.   The Canal Policy covers "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"   (Document 1 at 6).

On October 7, 2021, Mr. Armstrong was driving his tractor trailer northbound on U.S. 119 in Williamson, West Virginia.   Eric Sammons, a Williamson resident, was also traveling on that portion of the highway.   Mr. Armstrong allegedly cut Mr. Sammons off, which enraged Mr. Sammons.   Some time later, Mr. Sammons blocked Mr. Armstrong's tractor trailer with his car and exited his vehicle.   Mr. Sammons approached the tractor trailer and Mr. Armstrong rolled down the window of the tractor trailer.   Canal contends that Mr. Sammons made threatening comments and opened Mr. Armstrong's door.   Mr. Armstrong fired a pistol at Mr. Sammons, hitting him in the chest.   The gunshot wound resulted in Mr. Sammons' death.

On March 27, 2023, Kim Sammons, Mr. Sammons' widow, filed the underlying action (Case No. 2:23-cv-236) in this Court alleging various tort claims against Armstrong Trucking, EMA, and Mr. Armstrong.   On November 13, 2023, Canal filed this case seeking declaratory judgment that the claims in the underlying action are not covered under the Canal Policy, and that Canal therefore has no duty to defend or indemnify the defendants.   Canal's motion for judgment on the pleadings and Mrs. Sammons' cross motion for judgment on the pleadings are now pending before the Court.

## APPLICABLE LAW

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought."[1]   28 U.S.C. § 2201.   This authority is discretionary, but the

Fourth Circuit Court of Appeals has explained that a declaratory judgment action "is appropriate

when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue,

and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy

giving rise to the proceeding." *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir.

2004) (internal quotation marks omitted).   "It is well established that a declaration of parties'

rights under an insurance policy is an appropriate use of the declaratory judgment mechanism."

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

**STANDARDS OF REVIEW**

*A. Summary Judgment*

The instant motion for judgment on the pleadings is brought pursuant to Fed. R. Civ. P.

12(c), which states, in relevant part, that "after the pleadings are closed – but early enough not to

delay trial – a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   A motion

for judgment on the pleadings must be analyzed under the same standard as a motion for summary

judgment pursuant to Fed. R. Civ. P. 56.   *King v. Gemini Food Servs. Inc.*, 562 F.2d 297 (4th Cir.

1977).   "[A] party is entitled to summary judgment in its favor if the pleadings . . . show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."   Fed. R. Civ. P. 56(a); *McMellon v. U.S.*, 395 F.Supp.2d 411 (S. D. W. Va. 2005)

---

1 Title 28, Section 2201, of the United States Code provides, in pertinent part: "[i]n a case of actual controversy within
its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights
and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be
sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as
such." *Id.*

(Goodwin, J.); S*ee* also *Hunt v. Cromartie,* 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322–23. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### B. Determination of Insurance Policy Coverage

The Supreme Court of Appeals of West Virginia has instructed that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, *Tennant v. Smallwood,* 568 S.E.2d 10 (W. Va. 2002) (citation and quotation omitted). "[W]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.,* 172 S.E.2d 714, 715 (W. Va. 1970) (citations omitted).

On the other hand, if a policy's provisions are ambiguous, they will be liberally construed in favor of the insured. *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d 156, 160 (W. Va. 1986) (citations omitted) ("since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured.") However, "such construction should not be unreasonably applied to contravene the object and plain intent of

the parties." Syl. Pt. 6, *Hamric v. Doe*, 499 S.E.2d 619 (W. Va. 1997) (quoting Syl. Pt. 2, *Marson Coal Co. v. Ins. Co. of State of Pennsylvania*, 210 S.E.2d 747 (W. Va. 1974)). A policy provision is ambiguous if it is "reasonably susceptible of two different meanings or . . . of *such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning*." *Glen Falls Inc. Co. v. Smith*, 617 S.E.2d 760, 768 (W. Va. 2005) (quoting Syl. Pt. 5, *Hamric*, 499 S.E.2d 619 (emphasis in original)).

If coverage is not intended to apply, the policy should clearly indicate that insurance is not available. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." *Satterfield v. Erie Ins. Property and Cas.*, 618 S.E.2d 483, 487 (W. Va. 2005) (quoting Syl pt. 10, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), overruled on other grounds by *Parsons v. Halliburton Energy Services, Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016)).

## DISCUSSION

Canal argues that under Florida law,[2] physical violence stemming from a road rage incident does not result from the ownership, maintenance, or use of a vehicle, as required by the language of the policy. This argument hinges on the Florida Supreme Court's decision in *Race v. Nationwide Mut. Fire Ins. Co.*, which established a three-prong test to determine if liability for an injury arises from the ownership, maintenance, or use of an automobile. 542 So.2d 347, 349 (Fla. 1989).

---

2 The Defendants concede that Florida law should be applied for purpose of determining the question of insurance coverage. Therefore, the Court will not recount Canal's conflict of laws argument.

First, "the accident must have arisen out of the inherent nature of the automobile, as such." *Id*.

Second, "the accident must have arisen within the natural territorial limits of an automobile, and

the actual use, loading, or unloading must not have been terminated." *Id*. Finally, "the

automobile must not merely contribute to cause the condition which produces the injury, but must,

itself, produce the injury." *Id*. In *Race*, the court ruled that an assault between drivers after a car

accident was not covered under an automobile liability policy that limited coverage to injuries

arising out of ownership, maintenance, or use of a vehicle, because the assault was unrelated to

the vehicle's use. *Id*. at 351. Canal argues that *Race* applies here because Mr. Sammons' death

did not arise out of the nature of the vehicle.

In their response and cross motion, the Defendants cite *Allstate Ins. Co. v. Gillespie*, in

which a Florida appeals court found that policy language identical to the Canal Policy should be

construed liberally to afford broad coverage. 455 So.2d 617, 620 (Fla. 2d DCA 1984). In that

case, the insured fired a gun at another driver after he cut that driver off in traffic. *Id*. at 619.

The court found that the incident was "inexorably tied to [the insured's] use of his automobile"

and therefore covered by the policy. *Id*. at 620. The Defendants also cite *Valdes v. Smalley*, in

which an insurer was required to provide coverage for an incident in which a driver threw a glass

mug from a moving car, killing a bystander. 303 So.2d 342, 345 (Fla. 3d DCA 1974). The court

reasoned that coverage was required because an insured throwing items from a moving vehicle

was a reasonably foreseeable action. *Id*. The Defendants argue these cases are similar to the

facts presented here and should lead to a comparable result.

The Defendants also contend that *Race* is distinguishable from *Gillespie* and *Valdes*

because *Race* involved an intentional assault, rather than a negligent shooting. Specifically, they

state that *Race* addressed whether recovery was possible under an uninsured motorist policy for

an intentional assault by an uninsured motorist after a car accident.   They further argue that *Race* is distinguishable from *Gillespie* and this case because the drivers here and in *Gillespie* created the conflicts because of their driving behavior.

Canal responds that the Defendants' distinction based on intent is irrelevant, as the *Race* court did not consider the parties' intent, nor did the decision depend on it.   Canal also argues that *Gillespie* is inapplicable here because it predates *Race* and is limited to personal injury protection (PIP) claims.   Finally, Canal points to several other cases decided by Florida courts emphasizing that, under *Race*, the automobile must cause the injury for liability to attach to the insurer.   *Lancer Ins. Co. v. Gomez*, 799 So.2d 334 (DLA 3d DCA 2001); *Progressive Express Ins. Co. v. Rasier (FL), LLC*, No. 23-cv-60654, 2024 WL 1529143.333 (S.D. Fla. Apr. 9, 2024).

The parties have presented no disputed facts. The Court finds that under Florida law, Mr. Sammons' injuries do not arise out of the ownership, maintenance, or use of Mr. Armstrong's tractor trailer. Both *Gillespie* and *Valdes* predate *Race*. *Race* addresses an uninsured motorist insurance policy that limits recovery for injuries to those that "[arise] out of the ownership, maintenance, or use" of a motor vehicle.   542 So.2d at 348.   However, more specifically, in that case, the court declined to apply the more liberal PIP interpretation of claim nexus, which simply requires that there be "some nexus" between the vehicle and the injury, to uninsured motorist benefits.   *Id*.   Instead, the court applied the stricter standard, used in automobile liability policies, which requires that the accident arise out of the "inherent nature of the automobile," within the "natural territorial limits of an automobile" such that its actual use "must not have terminated," and that the automobile "must not merely contribute to cause the condition which produces the injury, but must, itself produce the injury."   *Id*. at 349.   This standard thus excludes remote injuries from coverage.   *Id*.

In this case, both Mr. Armstrong's and Mr. Sammons' vehicles were parked, and the use of their respective vehicles was thus terminated.   Additionally, the shooting of the gun was wholly unrelated to the inherent nature of the vehicle.   The vehicle also did not contribute to Mr. Sammons' injury, nor did it increase the likelihood of injury, as in *Valdes*.   At most, Mr. Armstrong's driving may have contributed to the hostilities between the parties that created the circumstances for the deadly confrontation.   However, Mr. Armstrong's driving was not what produced the injury, as there was no contact between Mr. Sammons and Mr. Armstrong's vehicle. Therefore, Mr. Sammons' death did not arise out of Mr. Armstrong's ownership, maintenance, or use of his vehicle, as required by the Canal Policy.

The Defendants' attempt to distinguish *Race* from the case at hand based on the intentions of the parties is unavailing.   The only time *Race* makes a distinction based on intent is when the court assumed that the tortfeasor's actions were negligent, rather than intentional, simply to avoid considering any intentional act policy exclusions.   Thus, the Defendants' argument that the "claims in this matter are couched in negligence", and therefore distinguishable from *Race,* is immaterial and flatly unpersuasive.   (Document 27 at 5).   The critical question here is not whether Mr. Armstrong's actions were intentional or negligent, but whether the incident met the three-prong test from *Race*.   As established above, it does not meet this test, and, therefore, Canal owes no duty to defend or indemnify under the policy.

**CONCLUSION**

For the reasons stated herein, the Court **ORDERS** that the *Canal Insurance Company's Motion for Judgment on the Pleadings* (Document 24) be **GRANTED**, and the Defendants' *Cross-Motion for Judgment on the Pleadings* (Document 27) be **DENIED**.   The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:          November 19, 2024

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA